**KAZEROUNI LAW GROUP A.P.C.**
Ross H. Schmierer, Esq. (RS-7215)
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054
Phone: (732) 588-8688
ross@kazlg.com

*Attorneys for Plaintiff and Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Tanika McQueen, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>American Express Travel Related Services Company, Inc.<br><br>Defendant. | Civil Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Tanika McQueen ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint (the "Complaint") against defendant American Express Travel Related Services Company, Inc. ("Defendant" or "AMEX"), and alleges, upon personal knowledge as to her own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.     Congress has found that the use of electronic systems to transfer funds provides the potential for substantial benefit to consumers.  Due to the unique

characteristics of such systems, Congress passed the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA") to provide a basic framework, establishing the rights, liabilities, and responsibilities of participants in electronic funds transfer systems, most particularly, to provide consumers with individual rights.

2.    The EFTA allows consumers to challenge errors and have them corrected within a certain time with limited financial penalties.

3.    Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id*. at 1693d-l.

4.    Plaintiff brings Complaint against Defendant for its patent violations of the EFTA as alleged with specificity below.

## JURISDICTION AND VENUE

5.    This action arises out of Defendant's violations of (i) the Electronic Fund Transfers Act, 15 U.S.C. §§ 1693, *et seq.* ("EFTA"); and (ii) the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.

6.    As such, the Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1331, 15 U.S.C. § 1693 *et. seq*. as well as 28 U.S.C. § 1367 for the supplemental state claims.

7.      This Court also has personal jurisdiction over the Defendant in this action because Defendant's conduct and wrongdoing took place in this County and because Defendant is registered to do business in the State of New Jersey.

8.      Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this district, the conduct complained of herein occurred within this judicial district, Defendant conducted business within this judicial district at all times relevant, and communications giving rise to this action occurred in this District.

## PARTIES

9.      Plaintiff is a citizen of New Jersey and currently resides in Middlesex County, New Jersey.

10.     Plaintiff is a "person" as defined by 15 U.S.C. §§ 1602(e) as well as Regulation E in 12 C.F.R. 1005.2(j), and from whom Defendant failed to properly investigate a fraudulent claim reported by Plaintiff while continuing to hold Plaintiff liable for said transactions.

11.     Upon information and belief, Defendant is a foreign corporation with its principal place of business located at 200 Vesey Street, New York, New York 10285.

12.     Defendant is also a "person" as defined by 15 U.S.C. §§ 1602(e) as well Regulation E in 12 C.F.R. 1005.2(j), and used throughout EFTA and a "financial institution" as defined by 15 U.S.C. § 1693a(9).

13.     Defendant is licensed as a money transmitter by the New York State Department of Financial Services.[1]

14.     The term "electronic fund transfer" which means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, and transfers initiated by telephone. *See* 15 U.S.C. § 1692a(7).

15.     Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## FACTUAL ALLEGATIONS

16.     Non-party Serve provides certain financial services to consumers.[2]

17.     As part of its services, Serve enables consumers to open a Serve® American Express® Jackson Hewitt® Prepaid Debit Account ("Account").

---

[1] https://www.serve.com/
[2] https://apps.apple.com/us/app/serve/id425685843

18.     Account holders can deposit tax refunds into their Account as well as other funds.[3]

19.     Serve offers these services whether an Account holder files directly with the IRS or works with a tax professional.[4]

20.     One such tax professional, non-party Jackson Hewitt, participates in this process.

21.      Jackson Hewitt ("JH") is a professional tax service with over 6,500 franchised and company-owned offices throughout the United States.[5]

22.     JH is headquartered in Parsippany, New Jersey and provides full service individual federal and state income tax preparation.[6]

23.     JH is one of the largest federal income tax preparation services in the United States and serves nearly 2 million taxpayers a year.[7]

24.     After completing its customers' taxes, JH, *inter alia*, provides certain customers with a Serve® American Express® Jackson Hewitt® Prepaid Debit card ("Card"), which are issued by Defendant.[8]

---

[3] https://www.serve.com/tax-refund
[4] https://www.serve.com/tax-refund
[5] https://www.winmo.com/open/company/service-businesses-accounting-consulting-law-firms/nj/jersey-city/jackson-hewitt-tax-service-inc/17023
[6] Id.
[7] Id.
[8] https://www.serve.com/jacksonhewitt

25.    The Card is a reloadable prepaid debit card that functions similarly to a basic debit card tied to a checking account at a traditional bank.

26.    As such, customers are able to use the Card for more than their tax refund.

27.    Specifically, they are able access ATMs and pay bills.

28.    Lastly, the Card holders are afforded purported "Fraud Protections."

29.    Specifically, Serve's website provides that "[i]f [a customers] Serve card is ever lost or stolen, we've got you covered for fraudulent purchases."[9]

## FACTUAL ALLEGATIONS AS TO PLAINTIFF

30.    Plaintiff is domiciled in New Jersey.

31.    In 2022, Plaintiff utilized JH's tax preparation services.

32.    After the tax documents were completed, JH provided Plaintiff with a Card to receive her federal and state refunds.

33.    In an email from "servicing@app.serve.com", Plaintiff was notified that she received her Federal Tax Refund.

34.    Specifically, the email indicated:

Hi TANIKA, You received a Federal Tax Refund, and the money is now available in your Serve Prepaid Debit Account.  Please keep this email for your records.
Transaction Details:
Sent to                                TANIKA MCQUEEN
Amount                                       $3,002.05
Received On                                   2/16/2023

---

[9] https://www.serve.com/jacksonhewitt

35.    On February 17, 2023, Plaintiff attempted to use the Card and learned that the Account had *zero dollars*.

36.    As Plaintiff would learn, an unknown person withdrew approximately $2930 in a series of ten small ATM transactions at a CVS pharmacy located in Brooklyn, NY.

37.    However, Plaintiff has never travelled to Brooklyn for any kind of banking transaction.

38.    In addition, Plaintiff never lost her Card.

39.    Plaintiff also never wrote down or shared her PIN number.

40.    Plaintiff immediately reported the theft to Serve.

41.    On February 24, 2023, Plaintiff also submitted a "Declaration of Fraud" detailing the events that transpired.  A true and accurate copy is annexed hereto as **Exhibit A**.

42.    Plaintiff declared that "above given information is true and correct to my knowledge. I understand that I can be held liable for all charges incurred if a dispute raised by me is found invalid and may incur criminal and/or civil liability if I am found by a court of competent jurisdiction to have knowingly reported a false claim." *See* **Exhibit A**.

43.    Despite submitting the "Declaration of Fraud" and sending several emails to Serve, Serve refused to restore the lost funds.

44.     Specifically, on March 9, 2023, Serve rejected her claim, saying their investigation determined that "no error occurred and that transaction(s) in question was authorized."

45.     On March 10, 2023, Plaintiff filed a police report with the Highland Park Police Department detailing the theft and events that transpired.  A true and accurate copy of the Report is annexed hereto as **Exhibit B**.

46.     To date, Plaintiff has not received any reimbursement or compensation for the funds unlawfully removed from her Account.

47.     In addition, to Plaintiff's experiences, Defendant has been accused of these same tactics by consumers throughout the country.

48.     Indeed, the website of a consumer law firm located in Chicago, Illinois indicates that: (i) "[o]ur lawyers have had ***hundreds of cases*** against Jackson Hewitt and the American Express Serve Card";  (ii) such "[p]ast Jackson Hewitt Serve Card lawsuits include failing to refund unauthorized transactions"; and (iii) "[o]ur legal claims have been based on breach of contract, consumer fraud, as well as violation of the Electronic Funds Transfer Act (EFTA) and Regulation E."[10]

---

[10] https://www.consumerfraudlegalservices.com/amexjacksonhewitt (emphasis added).

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class, which are defined is follows:

> All persons within the United States whose Serve bank account was debited for one or more transactions without the consumer's written preauthorization within one year prior to the filing of this Complaint.

50.     The above-described classes of persons shall hereafter be referred to as the "National Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

51.     The "National Class Period" means one year prior to the filing of the Complaint in this action.

52.     Plaintiff also seeks certification of the following sub-class pursuant to Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure:

All New Jersey citizens within the six years prior to the filing of this Complaint whose Serve bank account was debited for one or more transactions without the consumer's written preauthorization authorization.

53.    The above-described class of persons shall hereafter be referred to as the "New Jersey Class." Excluded from the New Jersey Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

54.    The "New Jersey Class Period" means six years prior to the filing of the Complaint in this action.

55.    There is a well-defined community of interest in the litigation, the proposed class is easily ascertainable, and Plaintiff is a proper representative of the National Class and/or the New Jersey Class.

56.    Ascertainability: Members of each class are readily ascertainable from Defendant's own records and/or Defendant's agents' records.

57.    Numerosity: Each class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the classes are unknown to Plaintiff at this time and can only be ascertained through

appropriate discovery, but on information and belief, Plaintiff alleges that there are at least thousands of members of each class. The precise number of members in each class is unknown to Plaintiff.

58.    Commonality: There are questions of law and fact common to Plaintiff, the National Class and the New Jersey Class that predominate over any questions affecting only individual members of each class. These common questions of law and fact include, without limitation:

i)    Whether Plaintiff and the Class Members lost money that was transferred from their Serve bank account;

ii)    Whether Plaintiff and the Class Members were account holders of Serve at the time of the fraudulent or unauthorized transactions;

iii)    Whether Defendant violated EFTA by failing to adequately investigate the error reporting of fraudulent or unauthorized transactions of Plaintiff and the Class Members;

iv)    Whether Defendant violated EFTA by failing to correct errors on the accounts of Plaintiff and the Class Members within forty-five (45) days of the transaction being disputed;

v)    Whether the transactions at issue were unauthorized EFTs making them errors subject to EFTA's remedial provisions, including Regulation E;

vi)    Whether Plaintiff and the Class Members are entitled to maximum statutory damages, costs, and fees under EFTA;

vii)    New Jersey Sub-Class: Whether the conduct of Defendant was an unfair business practice as that term is defined in New Jersey's Consumer Fraud Act; and

viii)    Whether Plaintiffs and the Classes are entitled to injunctive relief, including public injunctive relief

59.    <u>Typicality</u>: Plaintiff's claims are typical of those of other members of the Nationwide Class and Sub-Class because Plaintiff was a victim of unauthorized withdrawal of funds from her Serve account. After reporting the error(s) and disputing the unauthorized transaction(s), Plaintiff was informed by Defendant that the unauthorized transaction(s) would ultimately not be reversed.

60.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff's interests do not conflict with those of members from either class. Plaintiff has retained counsel experienced in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interest to those in either class and will fairly and adequately protect the interests of the National Class and New Jersey Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

61.     <u>Superiority of Class Action</u>: A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of each class is not practicable, and questions of law and fact common to each class predominate over any questions affecting only individual members of the National Class and New Jersey Class. Plaintiff and members of both classes have suffered or may suffer loss in the future by reason of Defendant's unlawful policies and/or practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient relief to class members and will thereby effectuate New Jersey's strong public policy of protecting the New Jersey public from violations of its laws.

62.     Even if every individual members of the classes could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

63.     By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system,

and protect the rights of each member of the classes. Further, it will prevent the very real harm that would be suffered by numerous putative class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

64.    Plaintiff reserves the right to expand each class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

### FIRST COUNT
### VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT
### 15 U.S.C. §§ 1693, ET SEQ.
### (ON BEHALF OF THE NATIONAL CLASS)

65.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

66.    EFTA and Regulation E "appl[y] to any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account." 12 C.F.R. § 1005.3(a).

67.    The primary objective of EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

68.    Financial institutions have error resolution obligations pursuant to Regulation E in the event that a consumer notifies the financial institution of an error. 12 C.F.R. § 1005.11.

69.    Defendant is a financial institution. 12 C.F.R. § 1005.2(i).

70.    Defendant agrees with consumers, including Plaintiff, to provide EFT services.

71.    "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. §] 1693d(a), (c), or (d) of this title or notification pursuant to [15 U.S.C. §] 1693(d)(b) of this title, receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. §] 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

72.    After said investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id.*

73.    A financial institution that provisionally recredits the consumer's account for the amount alleged to be in error pending an investigation, however, is afforded forty-five (45) days after receipt of notice of error to investigate. *Id*. § 1693f(c).

74.    When investigating a consumer's claim of error, "the financial institution must review any relevant information within the institution's own records for the particular account to resolve the consumer's claims." 12 C.F.R. § 1005, Supp. I at 11(c)(4).

75.    The financial institution "may not limit its investigation solely to the payment instructions where additional information within its own records pertaining to the particular account in question could help to resolve a consumer's claim." *Id*.

76.    Information that a financial institution may review as part of its investigation includes "ACH transaction records for the transfer" and the "transaction history of the particular account for a reasonable period of time immediately preceding the allegation of error," along with "[a]ny other information appropriate to resolve the claim." *Id*.

77.    Other information appropriate to consider in resolving a claim is whether a user has no history of false or unverifiable reports, no history of irresponsible account use, and whether the reported fraud is a common scheme. *See Green v. Cap. One, N.A.*, 557 F. Supp. 3d 441, 453 (S.D.N.Y. 2021).

78.     Ultimately, when a consumer is left liable for an unauthorized EFT, "the burden of proof is upon the financial institution to the show that the electronic fund transfer was authorized." 15 U.S.C. § 1693g(b).

79.     Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." Id. § 1693f(f).

80.     An EFT is "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. 1005.3(b)(1).

81.     Unauthorized EFTs are "electronic fund transfer[s] from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit." 12 C.F.R. 1005.2(m). The transactions at issue as to Plaintiff falls within this definition of "unauthorized."

82.     In particular, Comment 1005.2(m)-3 of Regulation E explains that "[a]n unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery."

83.     After the unauthorized EFTs were made, the EFTs appeared on the bank statements of Plaintiff and National Class Members.

84.     Plaintiff and National Class Members notified the Defendant of these errors within sixty (60) days of their appearances on the accounts of Plaintiff and National Class Members.

85.     Plaintiff also directly notified Serve of the errors within sixty (60) days of their appearance on her account, and of the details of the unauthorized transactions.

86.     After receiving notice of the unauthorized EFTs on Plaintiff's and other National Class Members' accounts, Defendant failed to conduct any investigation of Plaintiff's and National Class Members' error reporting and claims of fraudulent or unauthorized transactions.

87.     After receiving notice of the unauthorized EFTs on Plaintiff's and other National Class Members' accounts, the Defendant failed to adequately investigate Plaintiff's and National Class Members' claims.

88.     In investigating Plaintiff's claims, the Defendant failed to meaningfully consider Plaintiff's transaction histories for a reasonable period of time immediately preceding their claims of error to determine whether the unauthorized transactions were consistent with their prior transaction history.

89.     The Defendant also failed to adequately consider the facts and circumstances of the unauthorized transactions, especially in circumstances reflected in the police report Plaintiff submitted for the investigation of her claim.

90.     The boilerplate denial letters the Defendant sent to Plaintiff and other National Class Members fail to explain the review the Defendant conducted of its own records, including the specific records the Defendant reviewed and how these specific records supported the Defendant's conclusion that the disputed transactions were authorized.

91.     As a direct and proximate result of the conduct of the Defendant, Plaintiff and National Class Members were unable to reclaim funds that were fraudulently taken from their accounts within the authorized period for error resolution.

92.     Upon information and belief, Defendant knowingly and willfully failed to fulfill their obligations to investigate Plaintiff's unauthorized transactions and instead summarily concluded that the transfers of funds on accounts of Plaintiff and National Class Members were "not in error when such conclusion[s] could not reasonably have been drawn from the evidence available to the financial institution[s] at the time of [the] investigation." 15 U.S.C. § 1693f(e)(2).

93.     Defendant refused to completely reverse or refund funds to Plaintiff and National Class Members consistent with their obligations under Regulation E. 12 C.F.R. § 1005.11.

94.     As such, Plaintiff and National Class Members are each entitled to: (i) actual damages; (ii) treble damages; (iii) the lesser of $500,000.00 or one percent

(1%) of the net worth of the Defendant; and (iv) reasonable attorneys' fees and costs.

15 U.S.C. §§ 1693f(e)(2), 1693m(a)(2)(B)-(3).

## SECOND COUNT
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (ON BEHALF OF THE NEW JERSEY CLASS)

95.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

96.    As alleged with specificity herein, Defendant's conduct against Plaintiff and the New Jersey Class members violates the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, which declares unlawful the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise [] whether or not any person has in fact been misled, deceived or damaged thereby."

97.    As alleged with specificity herein, Defendant's conduct against Plaintiff and the New Jersey Class members also constitutes a violation of N.J.S.A. § 56:8-2.2, which declares it an unlawful to advertise services to the public "as part of a plan or scheme not to sell the item or service so advertised…"

98.    The Defendant's practices, as described herein, constitute deceptive business practices because, among other things, the Defendant's marketing regarding the Serve debit card service and its contractual promises indicate the Defendant will protect against fraudulent losses.

99.    Defendant's actions constitute unconscionable business practices because, as alleged above, it declined to reverse fraudulent charges on the account of Plaintiff, despite their marketing representations, the contract promises by the Defendant, and Defendant's statutory obligations pursuant to EFTA.

100.    Defendant's acts and practices alleged above constitute unlawful business acts or practices as they have violated the plain language of EFTA as described in Plaintiff's First Cause of Action above.

101.    Defendant has and will continue to unlawfully deny the transaction dispute of Plaintiff, the New Jersey Sub-Class, and the public by claiming that said disputed transactions are "authorized," even though said transactions are actually "unauthorized," as that term is defined by EFTA and applicable regulations.

102.    Consequently, the practices of Defendant constitutes unlawful business practices within the meaning of the New Jersey Consumer Fraud Act, as they violate EFTA as described above.

103.    Pursuant to the New Jersey Consumer Fraud Act, Plaintiff and the New Jersey Sub-Class are entitled to preliminary and permanent injunctive relief and an

order requiring Defendant to cease this unfair and unlawful business practice and for corrected advertising, including to benefit the New Jersey public who may use Serve debit cards in the future.

104.    As a result of Defendant's unlawful business practices, Plaintiff and the New Jersey Class members are entitled to a refund of any sums Defendant obtained through its unlawful activities, three times their actual damages from such activities, and recovery of their reasonable attorneys' fees and costs.

## JURY DEMAND

Plaintiff and the Classes demand a jury trial on all issues so triable.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully request the following relief:

a.    That this action be certified as a Class Action, establishing the Classes and any appropriate sub-classes that the Court may deem appropriate;

b.    Appointing Plaintiff as the representative of the Classes;

c.    Appointing the law firms representing Plaintiff as Class Counsel;

d.    An award of the lesser of $500,000.00 or one percent (1%) of the net worth of the Defendant;

e.    An award of treble damages against Defendant pursuant to the EFTA;

f.    An award of actual and/or statutory damages, in an amount to be determined at trial;

g.      Injunctive and other equitable relief against Defendant as necessary to protect the interests of Plaintiff and other members of the New Jersey Sub-Class, and an order prohibiting Defendant from engaging in unlawful and/or unfair acts described above, including public injunctive relief;

h.      Statutory pre-judgment and post-judgment interest on any monetary relief awarded;;

i.      Declare and find that Defendant violated N.J.S.A § 56:8-2;

j.      Declare and find that Defendant violated N.J.S.A. § 56:8-2.2;

k.      Award Plaintiff and the Class all damages to which they are entitled for Defendant's violations of the New Jersey Consumer Fraud Act, including a refund of all sums obtained through unlawful activities and three times their actual damages from such violations;

l.      Award all costs, expenses and attorneys' fees, with appropriate enhancement, incurred in prosecuting this claim;

m.      Award pre-judgment and post-judgment interest at the highest rates allowed by law;

n.      Injunctive relief in the form of an order directing Defendant to comply with New Jersey law and such other and further legal and equitable relief as the Court deems just and equitable.; and

o.    All other and further relief as the Court deems necessary, just, and proper.

Dated: February 14, 2024

**KAZEROUNI LAW GROUP A.P.C.**

By:    *Ross H. Schmierer, Esq.*
Ross H. Schmierer, Esq.
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054
(732) 588-8688
ross@kazlg.com

**NOTICE TO ATTORNEY GENERAL OF ACTION**

A copy of the Complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. §56:8-20.

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: February 14, 2024

By:    *s/ Ross H. Schmierer*
Ross H. Schmierer, Esq.